UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOSHUA ROBINSON CARTER,

    Plaintiff,

v.                                          Case No. 5:22-cv-433-JA-PRL

MIKE PRENDERGAST, ETHAN
VANSCOY and DAVID MILLER,

    Defendants.
_____

## ORDER

Plaintiff Joshua Carter was arrested during a traffic stop after a bag of white powder found in his car tested positive for cocaine. The charge was later dropped when more definitive lab testing failed to replicate that result. Carter—who maintained from the start that the powder was laundry detergent—then brought this suit against Citrus County Sheriff Mike Prendergast and the two deputies who conducted the traffic stop, Ethan Vanscoy and David Miller, for false arrest and malicious prosecution. Defendants now move for summary judgment on all claims. (Doc. 15). Because the Deputies had probable cause to arrest Carter, Defendants' Motion will be granted.

### I. BACKGROUND

The allegations in this case stem from a traffic stop that took place on the evening of May 16, 2020. That night, Carter and his acquaintance Ira Young

were passing through Homosassa, Florida, when they were pulled over by Deputy Vanscoy for driving without a functioning rear tag light in violation of section 316.221(2), Florida Statutes. (Carter Decl., Doc. 19-1, ¶ 3; Vanscoy Decl., Doc. 14-1, ¶ 7). As he approached the car window, Deputy Vanscoy says, he could smell the "odor of cannabis" emanating from inside and noticed Carter's "nervous behavior," prompting the deputy to ask for permission to search the vehicle. (Vanscoy Decl. ¶ 8). Carter consented to the search, and Deputy Vanscoy returned to his cruiser to wait for assistance. (*Id.* ¶ 9).[1] There, he queried a national crime database and discovered that Carter and Young had previously been charged with crimes involving cannabis and cocaine, respectively. (*Id.* ¶ 9).

A few minutes later, Deputy Miller arrived on scene and began searching the car while Deputy Vanscoy stood by with Carter and Young. (*Id.* ¶ 10). During the search, Deputy Miller discovered a burnt cannabis cigarette in the ashtray and a small, unmarked sandwich bag filled with white powder in a pull-down compartment next to the steering wheel. (Miller Decl., Doc. 14-2, ¶ 12).[2] Carter confirmed that the bag of white powder belonged to him and stated that it was prepackaged laundry soap from Spin City, a local laundromat. (Carter Decl.

---

[1] Carter denies that he was exhibiting any nervous behavior during the traffic stop but admits that he consented to the search of his vehicle. (Carter Decl. ¶ 7).

[2] Deputy Miller also discovered a smaller, empty plastic baggie beneath the driver's seat, which he described as the kind "commonly used to package illicit narcotics for sale." (Miller Decl. ¶ 12).

¶ 9). But when Deputy Miller tested the substance with an "agency issued Lynn Peavey cocaine field presumptive kit" the swab "immediately turned blue," indicating the presence of cocaine. (Miller Decl. ¶ 12). Presented with the test result, Carter acknowledged that the swab was blue but continued to insist that the powder was laundry soap. (Traffic Stop Recording at 04:14–04:17; Carter Decl. ¶¶ 13, 16).[3]

Despite his repeated denials, the Deputies arrested Carter and transported him to the Citrus County Jail, where he was charged with trafficking approximately 162 grams of cocaine. (*Id.* ¶¶ 17–18). The next day, Carter was released on a $2,500 bond with the felony charge still pending. (*Id.* ¶ 19). That charge was eventually dropped when further testing by the Florida Department of Law Enforcement failed to confirm that the substance was cocaine. (*Id.* ¶¶ 20–21).

In October 2020, months after the State Attorney's Office filed its nolle prosequi, a different set of deputies retested the powder with the same kind of agency-issued "Lynn Peavey" field-test kit used by Deputy Miller. (Smith Decl., Doc. 14-4, ¶ 11). Once again, the swab immediately turned blue, indicating the presence of cocaine. (*Id.*).[4] Deputy Miller, Deputy Vanscoy, and Deputy Smith

---

[3] Defendants have filed a flash drive containing an audio recording of Deputy Miller's conversation with Carter after the bag of white powder was found in his car.
[4] The flash drive filed by Defendants also contains video footage of this retest.

3

(who led the re-testing) have each stated that this is the only time in their careers that a field-test kit has provided an apparently false positive result. (Miller Decl. ¶ 17; Vanscoy Decl. ¶ 18; Smith Decl. ¶ 15).

On August 24, 2022, Carter filed this suit in state court against Deputy Vanscoy, Deputy Miller, and Sheriff Prendergast. (Doc. 1-1). Defendants timely removed the action to this Court, (Doc. 1), and Carter filed an Amended Complaint shortly thereafter, (Doc. 11). The Amended Complaint lists nine counts: false arrest and malicious persecution against the Deputies pursuant to 42 U.S.C. § 1983[5] (Counts I–IV); false arrest under Florida common law against Sheriff Prendergast (Count V); and malicious prosecution under Florida common law against the Deputies (Counts VI & VII).[6] Defendants now move for summary judgment on all counts.[7]

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[5] This statute provides for a cause of action against any person who, "under color" of state law, deprives an individual of the "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983.

[6] The Amended Complaint also includes claims against the Deputies for false arrest under Florida common law (Counts VIII & IX). Carter now "withdraws" those claims, stating that they were "inadvertently included" in the Amended Complaint. (Doc. 20 at 2 n.2).

[7] Defendants have also filed a motion seeking to exclude certain evidence offered by Carter in his Response to their Motion for Summary Judgment. (Doc. 22). Because the Court is granting Defendants' Motion for Summary Judgment, the Motion to Exclude will be denied as moot.

judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "However, [courts] draw these inferences only 'to the extent supportable by the record.'" *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)). "Thus, the requirement to view the facts in the nonmoving party's favor extends to genuine disputes over material facts and not where all that exists is 'some metaphysical doubt as to material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

### III. DISCUSSION

The disposition of this case comes down to a single question: did the Deputies have probable cause to arrest Carter on May 16, 2020? Despite Carter's arguments to the contrary, the answer to that question is undoubtedly yes. Therefore, Defendants are entitled to summary judgment on all counts.[8]

---

[8] With respect to the federal claims against them, Defendants also argue that they are entitled to qualified immunity. Because the Court concludes that the Deputies

5

*See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) ("[P]robable cause constitutes an absolute bar to both [Florida] state and § 1983 claims alleging false arrest."); *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010) ("[T]he existence of probable cause defeats a § 1983 malicious prosecution claim."); *Paez v. Mulvey*, 915 F.3d 1276, 1292 (11th Cir. 2019) ("The absence of probable cause is a necessary element of common law malicious prosecution." (citing *Miami-Dade Cnty. v. Asad*, 78 So. 3d 660, 664 (Fla. 3d DCA 2012))).

"[T]he standard for determining the existence of probable cause is the same under both Florida and federal law—whether 'a reasonable [person] would have believed [probable cause existed] had he known all of the facts known by the officer." *Rankin*, 133 F.3d at 1433 (quoting *United States v. Ullrich*, 580 F.2d 765, 769 (5th Cir. 1978)). "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)); *see also Paez*, 915 F.3d at 1285, 1292. Although probable cause

---

had *actual* probable cause to arrest and charge Carter with trafficking cocaine, it necessarily follows that they had *arguable* probable cause as well. Defendants are thus entitled to qualified immunity from Carter's federal claims. *See Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010) ("To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause.").

6

requires "more than mere suspicion," it does not require "convincing proof." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.3d 1112, 1120 (11th Cir. 1992). Indeed, while due process is meant to protect against extended periods of wrongful imprisonment, "[t]he Constitution does not guarantee that only the guilty will be arrested." *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

Carter was arrested and charged with "trafficking in cocaine" in violation of section 893.135(1)(b), Florida Statutes. According to that provision, "[a]ny person who . . . is knowingly in actual or constructive possession of[] 28 grams or more of cocaine . . . or of any mixture containing cocaine . . . commits a felony of the first degree." § 893.135(1)(b), Fla. Stat. Carter does not dispute that he was in possession of the bag of white powder found by Deputy Miller, nor does he suggest that the contents of the bag weighed less than 28 grams. Instead, Carter argues that the powder could not have provided probable cause for his arrest and prosecution because it was not in fact cocaine. Defendants counter that even though lab testing later revealed that the powder was not a controlled substance, the positive field test provided the Deputies with probable cause to arrest and charge Carter pending more definitive results.

Defendants are correct. Although the powdery substance seized by Deputy Miller was not ultimately determined to be cocaine, "[p]robable cause is based on what a reasonable officer would think at the time of arrest—not what they

7

could understand with the benefit of hindsight." *United States v. Leonard*, 4 F.4th 1134, 1146 (11th Cir. 2021). Moreover, "probable cause requires only a substantial chance of criminal activity, not certainty." *Id.* Here, as in past cases, the Deputies were entitled to "rely on the [positive] test result" obtained on the scene, even though that result was later refuted by further lab testing. *Fincher v. Monroe Cnty. Bd. of Comm'rs*, No. 5:18-cv-00424-TES, 2020 WL 1518625, at *9 (M.D. Ga. Mar. 30, 2020) (holding that police officers had probable cause to arrest the plaintiff after cotton candy found in her car falsely tested positive for methamphetamine); *see also Reddick v. Liehard*, No. CV 616-051, 2017 WL 2789280, at *5 (S.D. Ga. June 27, 2017) ("There can be no doubt that if the [field] test was conclusively positive [for the presence of cocaine], probable cause existed.");[9] *United States v. Jackson*, No. 6:12–cr–202–Orl–36TBS, 2013 WL 784650, at *6 (M.D. Fla. Mar. 1, 2013) ("Once the white cake-like substance discovered in Defendant's right front pocket field-tested positive for cocaine, the officers clearly had probable cause to arrest Defendant."); *Kitchens v. King*, No.

---

[9] In his Response, Carter points to this language from *Reddick* and argues that because the field test used by Deputy Miller provided only presumptive results—not conclusive ones—the test could not be used to establish probable cause. (Doc. 20 at 18). In context, however, it is clear that the court in *Reddick* is referring to "conclusive[]" results as those that are not adequately disputed by the plaintiff. *See* 2017 WL 2789280, at *4 ("Defendant would add [to the other circumstances suggesting probable cause] that he also field tested the white substance and determined that it was cocaine. This fact, however, is disputed because of Plaintiff's testimony that she did not observe 'the vial change colors.'"). Unlike the plaintiff in *Reddick*, Carter has not adequately disputed the test results obtained by Deputy Miller—as discussed further in the text of this Order, *infra*.

5:05-CV-275 (WDO), 2006 WL 2982882, at *5 (M.D. Ga. Oct. 17, 2006) (holding that the plaintiff's "arrest was based on probable cause because the field test confirmed the substance found in his car was marijuana," even though the plaintiff suggested that the substance was actually tobacco residue and the charge was later dropped).

Field test kits, of course, are not infallible—as this case demonstrates. But "no case at any level, in any court, has established (clearly or otherwise) that field drug tests cannot, because of possible false positives, support probable cause." *Brown v. Sirchie Acquisition Co.*, No. 1:16-CV-175-SCJ, 2017 WL 4082690, at *12 (N.D. Ga. Feb. 17, 2017). "Indeed, at least one court has held quite the opposite—that the possibility of false positives do[es] not render field tests insufficient to support probable cause." *Id.* (citing *McCabe v. Gonzales*, No. 1:13-CV-00435-CWD, 2015 WL 5679735, at *8 (D. Idaho Sept. 25, 2015) ("The fact that the field drug test could have produced a false positive, as [the plaintiff] contends, is irrelevant; probable cause does not require certainty so long as an officer reasonably believes that the substance in question is illegal.")). In this case, moreover, the Deputies had more than just a positive drug test: they knew that both Carter and his passenger had been charged with drug crimes in the past—including, in the case of the passenger, a crime involving cocaine—and they found in Carter's car not just a bag of white powder and a cannabis

9

cigarette[10] but also a smaller baggie "commonly used to package illicit narcotics for sale." (Miller Decl. ¶ 12). These facts, combined with the positive field test, were more than sufficient to establish probable cause for Carter's arrest and initial prosecution, dooming each of Carter's claims against Defendants.

Carter's arguments to the contrary are unavailing. In one such argument, for example, Carter objects that "Deputies Miller and Vanscoy failed to conduct a minimal investigation and follow up on" Carter's insistence that the bag of white powder was actually laundry detergent from a local laundromat, despite this information being "readily available and verifiable" at the laundromat itself, which was open at the time of his arrest. (Doc. 20 at 6). Carter is correct that "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause," *Rankin*, 133 F.3d at 1435, "especially where [exculpatory] information is readily obtainable, or where the accused points out

---

[10] Defendants argue that, even without the positive field test for cocaine, Carter's "actual or constructive possession of the cannabis cigarette gave deputies probable cause to arrest [him]" for violating section 893.13(6)(b), Florida Statutes (making it a "misdemeanor of the first degree" to possess "20 grams or less of cannabis"), thus "defeat[ing] all claims against Sheriff Prendergast and Deputies Miller and Vanscoy." (Doc. 15 at 15). Defendants are correct that Carter's possession of the cannabis cigarette is enough to defeat his claims for false arrest. *See Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." (quoting *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973))). But the Eleventh Circuit recently clarified that this so-called "any-crime rule" does not extend to claims of malicious prosecution. *Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020).

the sources of [such] information," *id.* at 1436 (quoting *Harris v. Lewis State Bank*, 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986)). But a deputy is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)); *see also Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts.").

Here, even if the Deputies had driven to the laundromat and confirmed that Carter had picked up an identical bag of laundry soap in recent days, this information would not have undermined probable cause. As Deputy Miller told Carter repeatedly during the traffic stop, he was not suggesting that all of the white powder was cocaine, only that it tested positive for the presence of cocaine, leaving open the possibility that a small amount of the drug had been mixed or "cut" with another substance, including laundry soap. (Traffic Stop Recording at 07:20–07:35). Carter's objection that the Deputies should have been able to "distinguish" the substance in his possession from cocaine "based on its look, smell, and taste," (Doc. 20 at 17), fails for similar reasons—to say nothing of the safety issues involved in smelling and tasting an unknown substance found during a traffic stop. *See also Fincher*, 2020 WL 1518625, at *8 (holding that officers had probable cause to arrest the plaintiff after a substance found in her

11

car tested positive for meth even though "[t]he substance smelled like cotton candy or blueberry, did not resemble the meth the officers had previously observed, and [the plaintiff and her boyfriend] identified it as cotton candy").

Perhaps recognizing that the positive drug test is detrimental to his claims, Carter tries a different approach—alleging that the test never happened. In his Response, for example, Carter states that "Deputy Miller never tested the substance on the scene and falsely stated [that] he did," (Doc. 20 at 3), insisting that there are triable issues of material fact regarding whether Deputy Miller "lied about having obtained a positive result[] or brought one to the scene," (*id.* at 10). Elsewhere, Carter broadens this accusation, suggesting that "Deputy Vanscoy corroborated [Deputy Miller's] lie." (Doc. 20 at 13).

To bolster this strategy, Carter points to *Reddick*, in which the district court conducted its probable cause analysis without considering a purported positive drug test taken at the scene because the results of that test were disputed by the plaintiff. 2017 WL 2789280, at *4 ("Defendant would add [to the other circumstances suggesting probable cause] that he also field tested the white substance and determined that it was cocaine. This fact, however, is disputed because of Plaintiff's testimony that she did not observe 'the vial change colors.'").[11] In that case, however, the dispute was based on the plaintiff's

---

[11] Importantly, the court in *Reddick* determined that even if it credited the plaintiff's assertion that the field test was negative, the officers still had probable cause

own testimony about what she witnessed during her traffic stop, not on innuendo or assumption. The plaintiff testified, for example, that "she saw [the defendant] pick up a substance from inside the car and place it in a field test vial," watched as the liquid inside the vial "did not change color" and then "witnessed the [defendant] throw the vial in nearby bushes" before walking back to her and stating falsely that the substance in her car had tested positive for cocaine. *Id.* at *2.

Carter offers no such testimony. He admits, in fact, that he did not witness Deputy Miller's testing process firsthand, (Carter Decl. ¶ 13), and he confirmed at the scene that the test swab was blue, indicating the presence of cocaine, (Traffic Stop Recording at 04:14–04:17). In other words, Carter offers no evidence to support his allegation that the Deputies lied about the positive test result. He has thus failed to establish a genuine dispute over material facts. *See Sawyer*, 243 F. Supp. 2d at 1262 ("In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988))); *see also Olin v. Scales*, No. 6:12–cv–1455–Orl–28TBS, 2014

---

to arrest her based on other circumstances known to them at the time, including "her presence at a drug transaction, her prior history with cocaine, the canine alert, and the presence of what appeared to be crack cocaine on the floorboard [of her car]." 2017 WL 2789280, at *5.

WL 1621952, at *3 (M.D. Fla. Apr. 22, 2014) ("When faced with a 'properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations.'" (quoting *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir.1997))).

## IV. CONCLUSION

It is perfectly understandable why Carter, having suffered the indignity of arrest for a crime he knew he did not commit, might feel some animosity toward Defendants—and a desire for adequate recompense. But the protections of the Fourth Amendment (and Florida law) guarantee only due process, not desired results. They do not, in other words, shield the innocent from arrest—only from arrest without probable cause. In this case, the facts and circumstances known to the Deputies at the time—including a positive drug test—provided them with probable cause to arrest and charge Carter with trafficking cocaine. The fact that this charge was eventually dropped may be cold comfort to Carter, who lived for two months under a Damoclean cloud of potential prosecution. In the end, however, process prevailed. Carter's claims to the contrary fail as a matter of law.

Accordingly, it is **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion for Summary Judgment (Doc. 15) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment providing that Carter takes nothing on all claims.

3. Defendants' Motion to Exclude (Doc. 22) is **DENIED as moot**.

4. After entry of judgment, the Clerk shall close the case.

**DONE** and **ORDERED** in Orlando, Florida, ~~on~~ April 7, 2023.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

15